FAIRCHILD INDUSTRIES, INC., Burns Aero Seat Co., Inc. and S. J. Industries, Inc.,

v.

The UNITED STATES.

No. 241–77.

United States Court of Claims.

May 6, 1981.

---

Richard R. Molleur, Washington, D. C., atty. of record for plaintiff. Michael W. York, David V. Anthony, Thomas C. Wheeler, and Pettit & Martin, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Acting Asst. Atty. Gen. Thomas S. Martin, Washington, D. C., for defendant.

Before DAVIS, NICHOLS, and BENNETT, Judges.

ON PLAINTIFF'S MOTION FOR PAR-
TIAL SUMMARY JUDGMENT ON
LIABILITY AND DEFENDANT'S
CROSS–MOTION FOR PARTIAL
SUMMARY JUDGMENT ON LIABIL-
ITY

NICHOLS, Judge.

In this case the plaintiff, a consolidated group of related corporations, petition for redetermination of excessive profits under the Renegotiation Act of 1951, 50 U.S.C. app. § 1218, *as amended*, by Pub.L.No. 92–41, 85 Stat. 97, 98. The case involves only the groups' fiscal year ended December 31, 1967. The Renegotiation Board (board) had ordered elimination of $2,400,000, adjusted for state taxes measured by income to $1,920,118, subject to the applicable Federal tax credit. The parties cross-moved for partial summary judgment because they believed that a statutory loss carryforward claimed by plaintiff and disallowed by the board would be allowable, if at all, in such an amount as virtually to assure a clearance. We conclude the board was right. There are no issues of relevant fact, purely issues of law. However, our conclusion does not put the case in a posture for a partial summary judgment for defendant. We therefore deny both motions and remand for further proceedings consistent with this opinion.

### I

Plaintiff, or strictly a predecessor entity, acquired on September 30, 1965, most of the assets of Republic Aviation Corporation. Both companies had been in the business of producing aircraft and aircraft components for the U. S. Armed Services, but Republic had recently not been successful financially. A lesser portion of assets went to the Farmingdale Company, not a member of the plaintiff group. Plaintiff, however, took over by novation various uncompleted contracts and subcontracts, and has completed them with success. It paid the net book value of Republic's assets, making payment with 1,457,557 shares of Fairchild's Treasury stock, which is agreed to be roughly a third of all the Fairchild stock outstanding,

plus $29,297,651 in cash. Republic liquidated and dissolved. It distributed the Fairchild stock to its own stockholders. During the period from 1963 to date of sale, Republic had incurred renegotiation losses totaling about $19,400,000. Considering separately Republic's fixed price F–4 subcontract under McDonnell Douglas as prime contractor, the loss was greater, $24,800,000. Republic had, however, a claim against McDonnell Douglas, which Fairchild acquired with other assets and has prosecuted in the New York State courts. By order of March 2, 1979, this court denied prior motions similar to those now before us, without prejudice, because we believed recovery against McDonnell Douglas and allowance of the full loss carryforward might result in a double recovery. Now, however, the claim against McDonnell Douglas has been settled. The agreed amount is $3,050,000, but the net recovery is only about $500,000 because of the impact of counsel fees and the necessity of sharing the recovery with Farmingdale. It is clear that offset of even the full settlement amount against the claimed carryforward would eliminate all question of a double recovery, yet leave most of the loss still standing. The carryforward issue therefore is not moot and must be decided. Our conclusions adverse to the carryforward, do moot the issue of how the McDonnell Douglas settlement should be treated in computing the carryforward and we say nothing further about that. The claimed carryforward, before adjustment for the settlement, is $14,600,000, a figure which allows for $4,800,000 of the loss to be applied to Fairchild's 1966 renegotiable profits, which are not otherwise before us. It remains to add that of Fairchild's renegotiable 1967 profits of $21,474,170 (before the board determination and with no allowance for the carryforward) about $8,900,000 were realized from performance of the F–4 subcontract which was so catastrophic for Republic.

### II

The carryforward in renegotiation applicable to the 1967 years is prescribed in

50 U.S.C. § 1213(m). It is of course available for losses incurred in renegotiable business only, and only to the extent not incurred by "gross inefficiency." Defendant does not claim the latter proviso as an escape hatch here. For years ending after 1958, losses can be carried forward 5 years but must be applied to the first profit year to wipe out that profit and only the remainder can be carried to the second profit year, and so forth. This is why Fairchild allows an adjustment to the loss for its 1966 profit. The allowance of a carryforward is in its terms mandatory, but it is to be "under regulations of the Board." This appears to be a legislative delegation. Authority to make interpretative and procedural regulations is fully spelled out elsewhere. It is obvious the delegation was much needed since the carryforward statutory provision does not attempt to answer many questions bound to arise, including but not limited to the issue we have here: what happens to the carryforward in case of a corporate reorganization?

■ The board prescribed a regulation it deemed controlling here, applicable to 1967 years. RBR § 1457.9, 32 C.F.R. § 1457.9 (1977). So far as pertinent it reads:

(e) *Carryforward upon acquisition of business.* When a contractor acquires the business of another contractor within the 5 fiscal years following the close of a fiscal year in which such other contractor sustained a renegotiation loss, such loss, after being absorbed by renegotiation profits in any fiscal year between the loss year and the year under review, as provided * * * shall be allowed as a renegotiation loss carryforward for the acquiring contractor if the loss contractor has ceased to exist and, in the opinion of the Board, such allowance is necessary to avoid inequity.

This regulation is criticized for not saying anything specific, except that the board will do what it pleases. It does, however, tell contractors that in case a reorganization substitutes a new contractor, the carryforward is not irretrievably lost, and this is something the statute did not require the

board to say. The term "necessary to avoid inequity" may perhaps mean only that the board will do what is fair and just in its eyes, but this is a nugget of useful information for a company contemplating a reorganization. It could submit the facts of its case and ask for a ruling. If the board had attempted to address all the multifarious situations that can arise in instances of corporate mergers and reorganizations, it would still have been working on its regulation when its statutory life expired. The regulation reflects therefore a robust common sense more often needed than discoverable, and is, in our view, unquestionably valid.

The board's "Final Opinion" in the case is made available as an exhibit, a refreshing change from the usual procedure by which the parties leave us to guess as to the board's reasoning. With respect to the claimed loss carryforward, the board's explanation conceded that—

Republic Aviation Corporation may have ceased to exist * * * [but] * * * Fairchild, the acquiring corporation, did not establish, within the meaning of RBR 1457.9(e) that it would suffer inequity if the Board did not recognize the renegotiation loss carryforward. In determining if the acquiring corporation would suffer inequity or undue hardship, in the Board's opinion, the primary consideration is whether, during the fiscal year during which such loss is claimed, the acquiring corporation is owned, directly or indirectly, by the same individual or substantially the same individuals who, as shareholders, partners, or otherwise, owned the acquired corporation during the fiscal years in which the overall loss was sustained.

In this case there was not a substantial continuity of ownership between the loss contractor (Republic Aviation) and the acquiring corporation (Fairchild) and the allowance of the loss carryforward is not necessary to "avoid inequity." Further, the Board notes that the contractor was not entitled to a net loss carryover for Federal income tax purposes.

Taking the last point first, the parties agree that the loss could not be carried forward for Federal income tax purposes, but do not suggest any reason why the fact is relevant. The statement seems to be rather an aside than a necessary part of the board's reasoning. We do not consider it further.

### III

When we consider the board's decision as to the carryforward, a preliminary question comes to mind not much discussed by the parties, namely: is that decision to be redetermined *de novo* as its ultimate conclusion must be, or is it a discretionary determination to be sustained if not an abuse of discretion, arbitrary, capricious, or not supported by substantial evidence? In this instance we agree with the board and would reach the same result *de novo*, so the precise standard of review can be left to another case.

Plaintiff's attack is on two fronts. In the first place, plaintiff concludes from "legislative history" of the regulation that continuity of ownership is excluded by the regulation, as a factor, instead of being made paramount.

Plaintiff says that until May 3, 1967, the then effective version of the regulation, codified as 32 C.F.R. § 1457.9(g) provided, following the words already quoted, that—

In determining whether the acquiring contractor would suffer inequity and undue hardship in the case of acquisitions other than by inheritance or operation of law, the primary consideration will be whether, during the fiscal year with respect to which such cost is claimed, the acquiring contractor is owned directly or indirectly, by the same individual or substantially the same individuals who, as shareholders, partners or otherwise, owned such other contractor during the fiscal year in which the over-all loss was sustained.

Plaintiff says the dropping of this provision, making it inapplicable to 1967 cases, announces an intent that continuity of ownership shall not be a factor. The dropped provision, however, could be read as barring recognition of continuity of ownership in case of any change, however small, in the makeup of the owners, shareholders, etc. For example, the Republic and Fairchild stock having both been publicly held, it could have been said there was nothing to show how many of the former Republic stockholders remained Fairchild holders in 1967. It is hardly likely that all did. If the board wanted to free its hands to decide a continuity in a less hairsplitting manner, to drop the quoted language would be an appropriate step to take. On the other hand, to announce it would disregard the continuity of ownership factor entirely, and see no difference between substantial continuity and complete discontinuity would be wholly unreasonable and the board would have had to say this expressly to persuade us that this was what it meant. The new language unquestionably does leave the contractor free to urge consideration of other factors than continuity, and as regards continuity itself, to say that substantial continuity should be enough.

We agree with the board that plaintiff did not show even substantial continuity. The losses suffered by Republic before the sale of its assets presumably were reflected in a shrinkage of assets or as growth of liabilities, down to the selling date. In either event, the shareholders of Republic bore the losses. There is nothing to show that Republic's inchoate right to a renegotiation loss carryforward was shown as an asset on the books or could have been, under accepted accounting principles. Therefore Fairchild paid nothing for it. The shares of Fairchild received by Republic as part of the consideration for the sale, having been distributed to the former Republic stockholders, whether they all remained Fairchild stockholders is unknown, but assuming they did, they held but a third of the outstanding Fairchild stock. Though they had borne all the loss the carryforward related to, they would as Fairchild stockholders enjoy but a third of the benefit of the carryforward. Two-thirds of the benefit would go to stockholders who had borne

no share of the loss. This is not substantial continuity.

Plaintiff exercises its freedom to urge consideration of other factors than continuity, with its argument that denial of the carryforward would confer a "substantial and inequitable windfall" on defendant. If no reorganization had taken place, the carryforward would have added to Republic's allowable costs for 1966 and 1967, shifting a large part of the F-4 losses to the period when the subcontract was profitable. Defendant is taking advantage of the reorganization to have its cake and eat it too. It benefits from the costly performance of 1963-65 yet it disregards these costs in pouncing on Fairchild and determining that the profits under the same subcontract were excessive in 1967.

Defendant, however, points out that this analysis of the source of the profits and losses is not warranted under the fiscal year method of renegotiation, which deals only in the overall fiscal year results. This statement we shall have to qualify later, but it is true that there is nothing in the carryforward statute itself, or in the board's interpretation of it, to reflect that the carryforward will operate any differently according to the degree of nexus between the losses to be carried forward and the profits to be eliminated. Actually, Fairchild performed the F-4 subcontract and other former Republic work in Republic's former plant which had become the Republic Division of Fairchild. Yet, if Republic's 1965 losses, and Fairchild's 1967 profits, had accrued in entirely different divisions of a single company dealing in entirely different defense products, the right to the carryforward would be exactly the same, no better and no worse. Fairchild's argument tends to blur that essential truth. Gross negligence aside, it moreover makes no difference to the carryforward right whether Republic's losses were due to underpricing, or to failure, within a reasonable price, to control the costs of production. There is nothing in the instant record to enable us to say which it was here. Yet from the point of view of criticizing defendant's stand as inequitable, it makes all the difference. If the losses were due to poor cost control, why should defendant, in renegotiating Fairchild, with no substantial continuity of ownership, be obliged to allow Fairchild credit for excessive costs from which defendant derived no benefit and which Fairchild did not incur?

The correct answer clearly is that the determination of a carryforward is not the only machinery in renegotiation by which the fairness of defendant's treatment of its suppliers may be refined to mitigate the crude impact of the overall fiscal year method. Where discontinuity of ownership exists, the kind of equitable consideration the plaintiff urges more properly has its use in the phase wherein the board or on redetermination, our trier of fact, must exercise judgment in application of the statutory factors, to determine what profit is reasonable.

The F-4 subcontract under McDonnell Douglas was, the board notes in its "Final Opinion," a fixed price one. The board alludes to the F-4 work under the "Risk" and "Contribution" factors, and under "Reasonableness of Costs and Profits" it opines that the F-4 costs "declined as a function of the learning curve" and that the corresponding price reductions were insufficient. Certainly, therefore, the F-4 subcontract received separate consideration in factor application and properly so. It is evident that Fairchild took over a losing operation and made it successful and profitable. The losses of Republic on the F-4 may have been of a startup or learning nature, which Fairchild escaped by taking on the job in the middle. The facts in our record on the carryforward claim were quite properly not extended to all the matters that might be considered in determining how much, if any refund, is sustainable on adequate consideration of the "Risk," "Contribution," and "Reasonableness of Costs and Profits" factors. We are of the opinion that these statutory factors, correctly applied, are perfectly adequate to cure any inequity to Fairchild that might result from disallowance of the carryforward claimed. Therefore, the carryforward is not necessary to

avoid inequity. The case is one that at least suggests the possible presence of facts that would justify more favorable recognition under the factors than the board accorded. On the other hand, the record is now wholly insufficient to show that denial of the carryforward is at all inequitable to Fairchild. The most one can say is that it might be if not wholly or partially compensated in factor application. It is impossible to tell whether the board applied such a compensation because its allusions to the F–4 are so indefinite. One trouble with the carryforward is that it is an all or nothing matter, whereas it may well turn out that equity is best served by transfer for factor application of part but not all of Republic's excess of costs over prices.

To summarize, we do not hold that upon occurrence of a reorganization the case for a carryover of losses is wholly dependent on a continuity of ownership. We do not think the board intended to so limit it in the regulation. But we agree with the board that the considerations the plaintiffs urge are not the ones appropriate to a decision whether or not to allow a carryforward, even if they are properly labelled equitable. They belong in factor application. If, because of our decision, a trial is necessary, we shall expect the trial judge's findings and opinion to deal, far more explicitly and fully than the board has done, with the problems of factor application that Fairchild's takeover of the Republic operation and the F–4 subcontract pose. We are not, however, expressing any view at this time, and have none, whether the refund ought to be more, the same, or less than the board's order would require, or nothing at all.

Accordingly, we deny both motions for summary judgment and remand the case to the trial division for further proceedings in conformity with this opinion.